UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | | |
|---|---|---|
| NEFF GROUP DISTRIBUTORS, INC. ) <br> (Plan Administrator of the Neff Health Plan, ) <br> and THE NEFF HEALTH PLAN, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> QBE INSURANCE CORPORATION, ) <br> ) <br> Defendant. ) | | CAUSE NO.: 1:08-CV-127-TS |

**OPINION AND ORDER**

This matter is before the Court on the Defendant's Motion to Dismiss [DE 18] and Brief in Support [DE 16], filed on June 27, 2008. On July 14, the Plaintiffs filed their Response [DE 21], and on July 16, the Plaintiffs filed their Amended Response [DE 23]. On July 16, the Defendant filed its Reply [DE 22]. For the following reasons, the Defendant's Motion to Dismiss is denied.

**BACKGROUND**

On May 8, 2008, the Plaintiffs filed their three-count Complaint. According to the allegations in the Complaint, Neff Group Distributors ("Neff") is the Plan Administrator of the Neff Health Plan ("Health Plan"), which provides health insurance for Neff's employees. (Pls.' Compl. ¶ 1.) Neff self-insures health care benefits up to the first $50,000 of health care benefits per calendar year, per employee, and during 2007 QBE Insurance Corporation ("QBE") was the excess loss insurance carrier for claims over that limit. (Pls.' Compl. ¶ 1.) On December 9, 2007, a dependent child of one of Neff's employees incurred medical expenses at Spectrum Health

Hospital ("Spectrum") in Grand Rapids, Michigan, in excess of $50,000, and the Health Plan paid the first $50,000. (Pls.' Compl. ¶ 1.) QBE refused to pay the claim for benefits because Meritain Health, Inc. ("Meritain"), Neff's third-party administrator, did not submit the claim for benefits on or before December 31, 2007. (Pls.' Compl. ¶ 1.) The Plaintiff has received other bills as well. (Pls.' Compl. ¶ 1.) In the first count of the Complaint, Neff (as a fiduciary of the Plan) seeks to enforce the provisions of the Plan and to have the Court order QBE to pay the benefits to the Plan and/or to reimburse Neff. (Pls.' Compl. ¶¶ 15–17.) In the second count, the Plaintiffs claim that QBE breached the excess loss insurance contract and that the Plaintiffs have suffered damages. (Pls.' Compl. ¶¶ 18–22.) In the third count, the Plaintiffs allege that QBE violated the terms of the excess loss insurance policy of which the Health Plan was a direct and intended beneficiary and that the Plan has suffered damages. (Pls.' Compl. ¶¶ 23–25.)

The Complaint premises this Court's subject matter jurisdiction on diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and on federal questions arising under the Employee Retirement Income Security Act ("ERISA") pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(a)(3). (Pls.' Compl. ¶ 5.) According to the Complaint, Neff is a citizen of Indiana based upon its incorporation and principal place of business being in Indiana. (Pls.' Compl. ¶ 2.) The Health Plan is alleged to be a citizen of Indiana, Ohio, Michigan, and Wisconsin. (Pls.' Compl. ¶ 4.) The Complaint alleges that QBE is incorporated in Pennsylvania with its principal place of business in New York and thus that it is a citizen of Pennsylvania and New York. (Pls.' Compl. ¶ 3.) The amount in controversy is alleged to exceed $75,000, exclusive of interest and costs. (Pls.' Compl. ¶ 5.) As to venue, the Complaint alleges that venue is proper in this District pursuant to 28 U.S.C. § 1391(c) because the parties conduct business in the District. (Pls.'

Compl. ¶ 6.)

On June 27, 2008, QBE filed an Amended Answer. QBE answered the Complaint with general denials of all facts and claims alleged by the Plaintiffs. In its Answer, QBE also alleged fifteen affirmative defenses.

Also on June 27, QBE filed its Motion to Dismiss and Brief in Support. Citing Federal Rule of Civil Procedure 12(b) and (c), QBE has moved to dismiss the Plaintiffs' Complaint against it on grounds that the Court lacks subject matter jurisdiction, that venue is not proper in this Court, that the Complaint has failed to state a claim upon which relief can be granted, and that the Complaint fails to name or join a party under Rule 19. On July 14 and 16, the Plaintiffs responded to QBE's Motion to Dismiss, and on July 16, QBE filed a Reply. The specific arguments made by the parties will be addressed below.

**DISCUSSION**

QBE asks the Court to dismiss the Complaint on a series of grounds, including: (1) because the Court lacks subject matter jurisdiction; (2) because venue is improper; (3) because Neff and the Health Plan have failed to state any claim upon which relief can be granted (in that the excess loss insurance contract compels arbitration of this dispute and QBE has no obligation to contribute or reimburse the Plaintiffs); and (4) because Meritain is a required party under Federal Rule of Civil Procedure 19 whom the Plaintiffs have failed to join.

As to the third ground and the arbitration issue, QBE argues in its Brief in Support of its Motion to Dismiss that the excess loss insurance agreement between Neff and QBE requires the parties to arbitrate this dispute, that such arbitration agreements are generally valid and

3

enforceable under Indiana law, and that this action should be either dismissed or stayed pending arbitration. In its Reply, QBE additionally requests that the Court order the Plaintiffs to comply with the Arbitration clause of the insurance contract. In addressing the arbitration issue, the Plaintiffs urge that the insurance contract creates an ambiguity by its inclusion of a Legal Action clause and an Arbitration clause and that, as a consequence, the insurance agreement should be strictly construed against the insurer and viewed from the standpoint of the insured. Based upon this purported ambiguity, the Plaintiffs propose that they be permitted to adjudicate this dispute in court or that, in the alternative, the clauses be read to allow the parties to select the method of adjudication. The Plaintiffs neither challenge the validity of the Arbitration clause, nor argue that QBE waived any contractual right to arbitrate, nor contend that certain issues are not subject to arbitration; they simply argue that the presence of the Legal Action clause renders it ambiguous.

The Federal Arbitration Act ("FAA") applies to written agreements to arbitrate "in any maritime transaction or a contract evidencing a transaction involving commerce," and it provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The determination of whether parties are contractually bound to arbitrate and what issues they are bound to arbitrate are matters to be determined by the court. *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 649 (1986) (stating that "[i]t is the court's duty to interpret [an] agreement and to determine whether the parties intended to arbitrate"); *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005). Although the FAA "'favors resolution of disputes through arbitration, its provisions are not to be construed so broadly as to include claims that were never intended for arbitration.'" *Cont'l Cas. Co.*, 417 F.3d at 730 (quoting *American*

4

*United Logistics, Inc. v. Catellus Dev. Corp.,* 319 F.3d 921, 929 (7th Cir. 2003)). The parties must have agreed in advance to submit the disputes to arbitration because the arbitration agreement is the source of the arbitrator's authority to resolve those disputes, and a party may not be forced to arbitrate any dispute that the party did not agree to arbitrate. *AT&T Techs.*, 475 U.S. at 648–49. Courts must be mindful that the FAA "'is a congressional declaration of a liberal federal policy favoring arbitration agreements" and "that questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration.'" *Cont'l Cas. Co.*, 417 F.3d at 730–31 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24 (1983)).

The issue whether the parties have agreed to arbitrate is governed by state law principles governing contract formation. *Cont'l Cas. Co.*, 417 F.3d at 730 (citing *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995); *Reliance Ins. Co. v. Raybestos Prods. Co.,* 382 F.3d 676, 678–79 (7th Cir. 2004)). Under Indiana law, "when an insurance contract is clear and unambiguous, the language therein must be given its plain meaning. On the other hand, where there is ambiguity, insurance policies are to be construed strictly against the insurer and the policy language is viewed from the standpoint of the insured." *Abstract & Title Guar. Co. v. Chi. Ins. Co.*, 489 F.3d 808 (7th Cir. 2007) (internal quotations and citations to Indiana authorities omitted).

The Seventh Circuit has instructed that "the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright." *Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 561 (7th Cir. 2008) (internal quotation marks and citations omitted). Although a party may expressly or implicitly waive a contractual right to

5

arbitrate, a party who seeks dismissal of a complaint based upon a binding arbitration clause successfully invokes (and does not waive) the clause. *Id.* at 561–62. Furthermore, "if one party to a contract containing an arbitration clause attempts to avoid arbitration and files suit in the district court, the other party may move to stay or dismiss the action on the ground that the FAA requires the arbitration clause of the contract to be enforced." *Volkswagen of Am., Inc. v. Sud's of Peoria, Inc.*, 474 F.3d 966, 970 (7th Cir. 2007) (citing 9 U.S.C. § 3 (authorizing a motion to stay) and 9 U.S.C. § 4 (authorizing a petition to compel arbitration)).

Based upon the materials submitted by the parties, including the contractual materials submitted with the Complaint, it appears that the parties included within their excess loss insurance contract a binding Arbitration clause. The Arbitration clause provides:

> *Any controversy or claim arising out of or relating to this Policy, or the breach thereof, shall be settled by Arbitration* in accordance with the rules of the American Arbitration Association, with the express stipulation that the arbitrator(s) shall strictly abide by the terms of this Policy and shall strictly apply rules of law applicable thereto. All matters shall be decided by a panel of three (3) arbitrators. Judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction. This provision shall survive the termination or expiration of this Policy. The parties hereto may alter any of this terms of this provision only by express written agreement, although such alteration may be before or after any rights or obligation arise under this provision.

(Pls.' Compl., Ex. 1, pages 15–16 (emphasis added).) This binding Arbitration clause is not rendered ambiguous by the Legal Action clause. Unlike the Arbitration clause, the Legal Action clause does not mandate a judicial forum for any controversy or claim arising out of or relating to the policy or breach of the policy. Instead, it simply requires that, before any actions at law or in equity may be brought to recovery on the policy, sixty days must have passed since written proof of loss was furnished in accordance with policy requirements, and it prohibits any action at law or in equity from being brought more than three years after written proof of loss was

6

required to be furnished. (Pls.' Compl., Ex. 1, at 15.) The Legal Action clause is not rendered meaningless by the Arbitration clause as it could apply in several scenarios such as a waiver of arbitration and issues arguably outside the scope of the Arbitration clause. In any event, these two clauses were part of the policy in effect when the medical bills were incurred, and the Plaintiffs' Complaint constitutes a controversy or claim arising out of or relating to the policy or breach of the policy such that the Arbitration clause applies and binds the parties to arbitration in this dispute. Specifically, the Plaintiffs are seeking enforcement of the policy, payment for benefits under the policy, and reimbursement, and are claiming breach of the agreement and a violation of its terms.

For these reasons, QBE's Motion to Dismiss will be granted in part as to QBE's request that this proceeding be stayed until such time as arbitration has been held. Given the Court's partial grant of QBE's Motion to Dismiss, the Court need not at this time address the remaining grounds asserted in QBE's Motion to Dismiss and thus are denied without prejudice and with leave to refile should circumstances warrant.

## CONCLUSION

For the foregoing reasons, Defendant QBE's Motion to Dismiss [DE 18] is GRANTED IN PART and DENIED IN PART WITHOUT PREJUDICE. The parties are ORDERED to pursue arbitration in accordance with the Arbitration clause of the excess loss insurance agreement. Pursuant to the FAA, 9 U.S.C. § 3, the action is STAYED pending resolution of the arbitration proceedings. The Defendant is ORDERED, upon conclusion of the arbitration proceedings, to file with the Court a written notice of the outcome.

SO ORDERED on October 28, 2008.

                                                    s/ Theresa L. Springmann
                                                    THERESA L. SPRINGMANN
                                                    UNITED STATES DISTRICT COURT
                                                    FORT WAYNE DIVISION